**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 26-cv-21870-ALTMAN**

**DENNY BARCACIO MENA**,

     *Petitioner*,

*v.*

**WARDEN FDC MIAMI**, *et al.*,

     *Respondents.*

_____/

## <u>ORDER</u>

Our Petitioner—Denny Barcacio Mena—has filed a Petition for Writ of Habeas Corpus (the "Petition") [ECF No. 1]. After a careful review of the Petition, the Government's Response to Order to Show Cause ("Response") [ECF No. 7], and the Petitioner's Reply ("Reply") [ECF No. 8], we **DENY** the Petition.

### BACKGROUND

The Petitioner is "a citizen of the Dominican Republic who entered the United States without inspection on February 10, 2023." Resp. at 1. "On March 2, 2023, a Notice to Appear was issued after Petitioner established a credible fear of persecution or torture." *Id.* at 2. "On or about April 12, 2025, Petitioner was arrested in Orange County, Florida for Battery (Domestic Violence)." *Ibid.* "The Petitioner is currently detained at the Miami Federal Detention Center awaiting the outcome of his removal proceedings." *Ibid.* The Petitioner "moved for a custody redetermination hearing on June 6, 2025," but the "Immigration Judge denied the request because [the] Petitioner ha[d] been . . . placed in Expedited Removal proceedings." *Ibid.*

The Petitioner now seeks habeas relief in our Court, requesting "an Order requiring either his release from the custody of U.S. Immigrations and Customs Enforcement" or "alternatively, ordering

that he receive a custody redetermination hearing before an Immigration Judge[.]" Pet. at 1. To that end, he offers scattershot arguments and neglects to organize his theory of the case within claim-specific counts. *See Cramer v. State of Fla.*, 117 F.3d 1258, 1261 (11th Cir. 1997) ("[A] rambling 'shotgun' pleading . . . is so disorganized and ambiguous that it is almost impossible to discern precisely what it is that these appellants are claiming."). So far as we can tell, however, the Petitioner "posits that his ongoing detention, and his eligibility for consideration of release on bond is governed by § 1226, not by § 1225," and that his "ongoing detention violates Petitioner's substantive and procedural due process rights under the Fifth Amendment." Pet. at 9, 12.[1]

The Respondents make three main arguments. *First*, they contend that we lack jurisdiction under 8 U.S.C. § 1252(a)(2)(A) to hear a challenge concerning "DHS's discretionary decision to place [the Petitioner] in expedited removal." Resp. at 4. *Second*, they say that we lack jurisdiction under 8 U.S.C. § 1252(g) to review the "Secretary of Homeland's decision to commence removal proceedings, including the decision to detain an alien pending such removal proceedings." *Id.* at 7. *Third*, they maintain that the Petitioner "remains subject to mandatory detention under 8 U.S.C. § 1225(b)(1) and ineligible for release on bond—even though he is currently in removal proceedings under 8 U.S.C. § 1229a." *Id.* at 9–10.

### THE LAW

Section 2241 allows district courts to grant relief to petitioners who are held "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). This jurisdiction extends to petitioners challenging their detention under our immigration laws. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

---

[1] The Petitioner also claims that his "ongoing detention violates the Fourth Amendment . . . because there are no reasonable, objective grounds for [his] ongoing and indefinite detention." Pet. at 12. But he neither provides supporting caselaw nor revisits this theory anywhere else in his Petition or Reply brief. We'll thus deem this argument abandoned.

## ANALYSIS

### I.      Jurisdiction

We'll start with the jurisdictional arguments. *See Taylor v. Appleton*, 30 F.3d 1365, 1366 (11th Cir. 1994) ("[A] court must first determine whether it has proper subject matter jurisdiction before addressing the substantive issues."). In his Reply, the Petitioner "concedes the limitations on judicial review of expedited removal proceedings described at . . . § 1252(a)(2)(A)," but argues that "the instant Petition includes no such challenge" and is instead "focused on Respondents' actions only after the cessation of the expedited removal proceedings initiated against him." Reply at 2.

Section 1252(a)(2)(A) casts a wide reach. Its statutory language—precluding judicial review of "any other cause or claim *arising from* or *relating to* the implementation or operation of an order of removal pursuant to section 1225(b)(1)"—covers not merely the decision to place the Petitioner in removal itself but also the downstream effects of that decision. *See Garland v. Aleman Gonzalez*, 596 U.S. 543, 550 (2022) ("[T]he 'operation of' the relevant statutes is best understood to refer to the Government's efforts to enforce or implement them."); *Babb v. Wilkie*, 589 U.S. 399, 405 n.2 (2020) ("We have repeatedly explained that the word 'any' has an expansive meaning." (quotation marks omitted)); Webster's Third New International Dictionary 97 (1993) (defining "any" as "one or some indiscriminately of whatever kind"). Any challenge to the Petitioner's current detention must therefore account for the fact that this detention *arose from* and/or *relates to* the original decision to place the Petitioner within expedited removal proceedings. *See* Resp. at 2 (explaining that the Immigration Judge denied the Petitioner's request for "custody redetermination" because the Petitioner was "initially placed in Expedited Removal proceedings").

The Petitioner shirks that inquiry. To be sure, he contends that "expedited removal proceedings . . . cease[] to exist upon the initiation of full removal proceedings[.]" Reply at 3. But that fails to explain why his detention doesn't nonetheless "'arise[] from' and 'relate[] to' the operation

3

and implementation of his removal order." Resp. at 5; *see also id.* at 5–6 ("Petitioner's detention is a secondary, temporary, and constitutionally permissible aspect of the expedited removal process itself." (quotation marks omitted)); *Jones v. Bank of Am., N.A.*, 564 F. App'x 432, 434 (11th Cir. 2014) (finding that the "failure to respond to any portion or claim in a motion indicates such portion, claim or defense is unopposed," and that, "when a party fails to respond to an argument or otherwise address a claim, the Court deems such argument or claim abandoned" (cleaned up)). In other words, even if the Petitioner is right that a *subsequent* full-removal proceeding displaces an *original* expedited-removal proceeding, he must still show that the latter doesn't derive from the former.

The Petitioner does no such thing. He resorts instead to a factual challenge by claiming that the "Respondents provide this Court with no evidence that Petitioner was ever served with an expedited order of removal or that he remains subject to an expedited order of removal." Reply at 3. Not so. The Respondents appended to their Response a February 2023 Notice and Order of Expedited Removal. *See* Exhibit C [ECF No. 7-3]. What's more, the Petitioner appears to concede the point by later representing that he "does not herein challenge anything having to do with his having initially been processed in accordance with 8 U.S.C. § 1225(b)(1)." Reply at 2. So, if nothing else, the Petitioner's conflicting positions defeat this factual attack.[2]

In sum, the Petitioner might not, in fact, intend to challenge his detention. But, to the extent that he *does*, he runs headlong into (but neglects to address) the broad reach of Section 1252(a)(2)(A). *See, e.g., Javier Gonzalez v. U.S. Att'y Gen.*, 844 F. App'x 129, 133 (11th Cir. 2021) ("Because this argument attacks the validity of the underlying 2001 expedited order of removal, we lack jurisdiction

---

[2] As to § 1252(g), the Petitioner explains that he "does not challenge the fact of the . . . arrest for purposes of initiating removal proceedings against him," and that he instead challenges his "ongoing and indefinite detention pending a determination in the removal proceedings against him." Reply at 6. We'll therefore highlight only two points on this topic. *One*, we lack jurisdiction under § 1252(g) to review the decision to commence removal proceedings against the Petitioner. *Two*, the Petitioner doesn't appear to raise a cognizable six-month *Zadvydas* claim.

to consider it."); *Khan v. Holder*, 608 F.3d 325, 329 (7th Cir. 2010) (explaining that cases involving "collateral attacks to expedited removal" cannot escape the statutory bar because "the language of the cases is not so limited, and nearly all of the cases addressing the expedited removal statute arise in the reinstatement context"); *Garcia de Rincon v. Dep't of Homeland Sec.*, 539 F.3d 1133, 1140 (9th Cir. 2008) ("'[T]his court lacks jurisdiction over de Rincon's habeas petition collaterally attacking her expedited removal order, because de Rincon does not raise any of the three permissible bases for habeas review in this court allowed under 8 U.S.C. § 1252(e)(2)."); *see also Patel v. United States Att'y Gen.*, 971 F.3d 1258, 1272 (11th Cir. 2020) ("But what Congress giveth, it can also taketh away.").

## II.       The Petitioner's Detention is Governed by 8 U.S.C. § 1225

Section 1225 governs the inspection and removal of a specific subset of aliens—"applicants for admission." 8 U.S.C. § 1225(a). Subsection (a)(1) defines "applicant[s] for admission" as "alien[s] present in the United States who [have] not been admitted *or* who arrive[ ] in the United States[.]" § 1225(a)(1) (emphasis added). An alien hasn't been "admitted" to the United States until he's obtained "lawful entry . . . into the United States after inspection and authorization by an immigration officer." § 1101(a)(13)(A). An applicant for admission who isn't "clearly and beyond a doubt entitled to be admitted" to the United States "shall be detained" for removal proceedings. § 1225(b)(2)(A).

The Petitioner spends some ten (circuitous) pages arguing that he "disagrees" with *Hernandez v. Miami Field Off. Dir.*, 2026 WL 554694 (S.D. Fla. Feb. 27, 2026). Reply at 8.[3] And the gist of that disagreement (from what we can gather) is that "Section 1225 does not describe aliens like Petitioner who entered the United States without inspection who are: (1) not included within a designated group of individuals described at §1225(b)(1)(A)(iii)(I); or (2) can establish that the alien has been physically

---

[3] In filing a twenty-page reply brief, the Petitioner ignored the clear instructions we outlined in our March 23, 2026 Order [ECF No. 6], which explained that "[a]ny reply . . . may not exceed **ten pages** in length." *Id.* at 2 (emphasis in original).

present in the United States for the 2-year period described at §1225(b)(1)(A)(iii)(II)." *Id.* at 10. That argument fails.

To be sure, whether an alien who's lived in the United States unlawfully for years is an "applicant for admission" under § 1225 has divided the judges in our District. *Compare Morales v. Noem*, 2026 WL 236307, at *8 (S.D. Fla. Jan. 29, 2026) (Singhal, J.) ("Because Petitioner is present without admission, he is an 'applicant for admission' governed by section 1225."); *with Ardon-Quiroz v. Assistant Field Dir.*, 2025 WL 3451645, at *7 (S.D. Fla. Dec. 1, 2025) (Becerra, J.) (holding that a petitioner like ours was "governed by section 1226(a) and, therefore, . . . entitled to an individualized bond hearing"). And the Eleventh Circuit hasn't resolved this split—although two relevant appeals are pending in that court. *See Alvarez v. Warden,* No. 25-14065 (11th Cir.); *Perez v. Parra*, No. 25-14075 (11th Cir.).

But the Fifth and Eighth Circuits *have* addressed this question. In *Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026), the Fifth Circuit concluded that "[t]he text and context of § 1225 contradict[ed]" the Petitioner's position and held that aliens "present in the United States [that] [have] not been admitted" are unambiguously "applicants for admission within the meaning of § 1225(a)(1)." *Id.* at 502. Similarly, in *Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026), the Eighth Circuit found that "the text here is clear that an 'applicant for admission' is also an alien who is 'seeking admission[.]'" *Id.* at 1138. After careful review, we think those circuits hold the better view.

The plain text of § 1225(a)(1) defines aliens, like our Petitioner, as "applicants for admission" notwithstanding their distance from the border or the time they've spent in the United States without admission. And, while the text of the statute resolves the question presented in our case, we also believe that the contrary view yields bizarre results. As the Fifth Circuit observed: "It seems strange to suggest that Congress would have preserved bond hearings exclusively for unlawful entrants." *Buenrostro-Mendez*, 166 F.4th at 508; *see also Avila*, 170 F.4th at 1135 ("But if . . . 'seeking admission'

only refers to aliens who are taking 'present-tense, affirmative action' to gain lawful entry into the country, why would an exception be needed for stowaways, who are unquestionably not doing so?").

We thus conclude that the Petitioner is an "applicant for admission" and that his detention is governed by § 1225, which doesn't grant him the right to an individualized bond hearing. *See Buenrostro-Mendez*, 166 F.4th at 502 ("Nor do the petitioners dispute that if § 1225(b)(2)(A) applies to them, it would require their detention without eligibility for bond. The statute unambiguously provides for mandatory detention. And neither § 1225(b)(1) nor § 1225(b)(2) says anything whatsoever about bond hearings." (cleaned up)).[4]

### III.    The Petitioner's Detention Doesn't Violate Due Process

The Petitioner also attempts to advance a due-process claim. *See* Pet. at 7 ("That Petitioner is being held indefinitely without access to an individualized bond hearing, which violates the Due Process Clause of the Fifth Amendment of the U.S. Constitution."). But the Supreme Court has already held that the government needn't conduct individualized bond hearings to determine an alien's flight risk and may detain aliens in removal proceedings to combat the risk of widespread flight. *See Demore v. Kim*, 538 U.S. 510, 528 (2003) (upholding § 1226(c)'s mandatory-detention scheme against a challenge that alien detainees had a due-process right to individualized bond hearings); *cf. Morales*, 2026 WL 236307, at *9 (rejecting a due-process claim in circumstances very similar to ours). And instead of

---

[4] We recognize that we've adopted what is currently the minority view among district courts. *See Beunrostro-Mendez*, 2026 WL 323330, at *3 ("Since DHS began to detain unadmitted aliens under § 1225(b)(2)(A), well over a thousand aliens have filed habeas corpus petitions seeking bond hearings. In most of these cases, the district court found in favor of the petitioner."). Still, many judges across the country agree with the position we've taken here. *See, e.g., Uulu v. Warden*, 2026 WL 412204 (E.D. Cal. Feb. 13, 2026) (Shubb, J.); *Arana v. Arteta*, 2026 WL 279786 (S.D.N.Y. Feb. 3, 2026) (Woods, J.); *Lopez v. Dir. of Enf't & Removal Operations*, 2026 WL 261938 (M.D. Fla. Jan. 26, 2026) (Pratt, J.); *Gutierrez Sosa v. Holt*, 2026 WL 36344 (W.D. Okla. Jan. 6, 2026) (Wyrick, J.). And we think that number will grow once these cases reach the circuit courts. *But see Cunha v. Freden*, 2026 WL 1146044, at *23 (2d Cir. Apr. 28, 2026) (holding that someone *is* an "applicant for admission" "because he is not requesting lawful entry into the United States after inspection and authorization").

developing a substantive argument to the contrary, the Petitioner merely suggests that "any discussion of whether [he] can set forth a cognizable Due Process claim will require additional information that is not currently available given the procedural posture of the instant matter." Reply at 19. Given the record before us and the briefing presented, we fail to see why the Petitioner's perfunctory invocation of Due Process warrants further review. *See N.L.R.B. v. McClain of Georgia, Inc.*, 138 F.3d 1418, 1422 (11th Cir. 1998) ("Issues raised in a perfunctory manner, without supporting arguments and citation to authorities, are generally deemed to be waived.").

## CONCLUSION

After careful review, therefore, we **ORDER and ADJUDGE** as follows:

1.  The Petition for Writ of Habeas Corpus [ECF No. 1] is **DENIED**.

2.  The Motion for Temporary Restraining Order [ECF No. 4] is **DENIED as moot**.

3.  All pending deadlines are **TERMINATED**, and any pending motions are **DENIED as moot**.

4.  The Clerk is directed to **CLOSE** this case.

**DONE AND ORDERED** in the Southern District of Florida on May 1, 2026.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:     counsel of record

        Noticing INS Attorney
        Email: usafls-immigration@usdoj.gov